IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRANDON R. WEST                              :

                                 :

    v.                                       :   Civil Action No. DKC 25-1436

                                 :

UNITEDHEALTH GROUP, INC., et al.             :

                                 :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this employment law case is the motion pursuant to Fed.R.Civ.P. 12(b)(3) to dismiss the complaint and compel arbitration filed by Defendants UnitedHealth Group, Inc., Optum Services, Inc., Melissa Kivela, James Jean-Louis, Eric Yoegel, and Shirell Stratton (collectively, "Defendants"), (ECF No. 9), and the motion to expedite the Rule 16 scheduling conference filed by Plaintiff Brandon R. West ("Plaintiff"), (ECF No. 11).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss the complaint and compel arbitration will be granted in part and the motion to expedite the Rule 16 scheduling conference will be denied as moot.

## I.    Background[1]

Pro se Plaintiff Brandon West is a U.S. Army veteran with documented service-connected disabilities, which were disclosed to his employer.  (ECF No. 1 ¶ 2).  In June 2018, Plaintiff joined UnitedHealth Group[2] as a Sales Implementation Manager.  (Id. ¶ 1). He received an offer letter on June 11, 2018, from UnitedHealth Group, which specified that the offer was to work in a division of OptumCare.  (ECF No. 9-4, at 2).  Underneath the heading "Conditions of Your Employment with UnitedHealth Group," the offer letter included a paragraph regarding an arbitration provision:

> Included within New Employee Connect (powered by Click Boarding) is UnitedHealth Group's Employment Arbitration Policy.  The Policy is a binding contract between you and UnitedHealth Group to resolve through arbitration all covered employment-related disputes that are based on a legal claim, and mutually waive the right to a trial before a judge or jury in court in favor of final and binding arbitration.  Your agreement to be bound by the terms of the Policy is a condition of your employment.  You will be required to read and electronically acknowledge in the New Employee Connect your understanding and acceptance of the Policy.  Your

---

[1] All facts are alleged in the complaint or included in documents supporting the motion to compel arbitration briefing.

[2] Plaintiff notes that he was employed by UnitedHealth Group and "Optum."  (ECF No. 1, at 4).  Defendant Optum Services, Inc. is identified as a "wholly owned subsidiary" of UnitedHealth Group that operates in Maryland.  (Id.).

> acknowledgement must be received prior to your start date.

(*Id.* at 4).  Plaintiff electronically acknowledged that he read and agreed to the Employment Arbitration Policy ("Arbitration Policy" or "Policy") on June 13, 2018.  (ECF No. 9-3, at 8). During his tenure, Plaintiff "consistently received favorable performance evaluations."  (ECF No. 1 ¶ 1).

In April 2024, Plaintiff took approved Family and Medical Leave Act ("FMLA") leave after the birth of his son.  (*Id.* ¶ 3). He returned to work on July 22, 2024, under a half-day reintegration schedule, and soon transitioned back to a full-time schedule.  (*Id.* ¶ 5). Following his return, Plaintiff was "excluded from partner focused strategy team calls, senior strategy meetings, and client conversations . . . without justification." (*Id.* ¶ 6).  Several of his responsibilities were reassigned, and his requests for clarification about his role and responsibilities were "denied or ignored by senior leadership."  (*Id.* ¶¶ 7, 8).

On July 26, 2024, Plaintiff met with Defendants Melissa Kivela and James Jean-Louis to discuss a "previously resolved Corrective Action Plan."  (*Id.* ¶ 9).  At the time, Ms. Kivela was the Implementation Director of the South Region and Plaintiff's direct supervisor, (*Id.* at 4), and Mr. Jean-Louis was Regional Vice

President of Sales, (*Id*.).[3]  During the meeting, Defendant Jean-Louis "emphasized heightened expectations" for Plaintiff's performance following his leave and remarked "FMLA wasn't available when I started – I just worked through it." *(Id*. ¶¶ 10-11).

Plaintiff "remained fully compliant with all licensure, communication, and productivity standards," but continued to be isolated from projects and "decision-making forums." (*Id*. ¶¶ 13-14).  His weekly meetings with regional leadership were "micromanaged by [Defendant] Kivela and newly assigned support personnel who resided outside the region." (*Id*. ¶ 15).  Plaintiff was the only male employee on Defendant Kivela's team at this time; two "similarly situated female colleagues within the same regional team" had previously taken leave under FMLA but "returned to full duties without limitation or adverse action." (*Id*. at ¶¶ 16-17).

On September 17, 2024, fifty-seven days after his return from FMLA leave, Plaintiff was terminated "without prior written notice or progressive discipline." (*Id*. ¶¶ 18-19).  The termination conversation was led by Defendants Kivela and Jean-Louis, who cited

---

[3] Plaintiff names two additional individual defendants but only provides brief allusions to them in his complaint. Defendant Eric Yoegel, who was President of the South Region, "ignored [Plaintiff]'s requests for support and mentorship." (ECF No. 1, at 4).  Defendant Shirell Stratton was the Vice President in the Mid Atlantic Market and "disregarded repeated operational concerns raised by [Plaintiff]."  (*Id*.).

"ambiguous marketing outreach supporting concerns without any supporting documentation of company policy" as the rationale. (*Id.* ¶¶ 20-21). Defendants later asserted the termination was based on "an alleged violation involving a single outbound marketing call." (*Id.* ¶ 23). According to Plaintiff, "[t]his rationale was inconsistent with internal guidance, was never previously cited as a concern, and emerged only after Plaintiff's return from protected leave and disclosure of his [Veterans Affairs] disability rating." (*Id.*). He adds that he received no progressive discipline or warnings related to the call before his termination, and that similarly situated employees were not disciplined for "comparable actions." (*Id.*).

Plaintiff filed his complaint in this court on May 5, 2025. (ECF No. 1). The complaint brings six counts: violation of the FMLA, 29 U.S.C. § 2615 (Count I), violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e (Count II), violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 (Count III), retaliation under the ADA (Count IV), wrongful termination under Maryland common law (Count V), and pretextual termination in violation of public policy (Count VI). (*Id.* at 8-9). Defendants filed a motion to dismiss the complaint and compel arbitration on June 4, 2025. (ECF No. 9). The same day, Plaintiff filed a motion to expedite the Rule 16 scheduling conference. (ECF No. 11).

Plaintiff filed a response in opposition to Defendants' motion to dismiss and compel arbitration on June 5, 2025, (ECF No. 12), and Defendants filed a reply on June 17, 2025, (ECF No. 14). Defendants filed a response in opposition to the motion to expedite the Rule 16 scheduling conference on June 17, 2025, (ECF No. 13), and Plaintiff did not file a reply.

## II.  Standard of Review

Fed.R.Civ.P. 12(b)(3) governs motions to dismiss for improper venue.  Another court in this district recently described the standard for motions under Fed.R.Civ.P. 12(b)(3) in the arbitration context:

> As the [United States Court of Appeals for the] Fourth Circuit has explained, "arbitration clauses are enforced in court by way of Federal Rule of Civil Procedure 12(b)(3) motions to dismiss for improper venue.  In considering such motions, courts may examine evidence outside the pleadings—including, as relevant here, the contract containing the applicable arbitration clause." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594 n.2 (4th Cir. 2023).  Further, "[a] plaintiff is obliged [] to make only a prima facie showing of proper venue in order to survive a motion to dismiss. In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012) (citations omitted).

*David v. Tesla*, 720 F.Supp.3d 390, 395 (D.Md. 2024).  As indicated by the fact that courts may consider evidence outside the pleadings

6

in this context, "[m]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Ford v. Genesis Fin. Sols., Inc.*, 726 F.Supp.3d 441, 448 (D.Md. 2024) (quoting *PC Constr. Co. v. City of Salisbury*, 871 F.Supp.2d 475, 477–78 (D.Md. 2012)), *aff'd*, No. 24-1341, 2025 WL 1540933 (4th Cir. May 30, 2025).  Treating the motion to compel under the summary judgment standard is proper when the formation of an arbitration agreement is disputed.  *Id.; see also Reed v. LTN Glob. Commc'ns, Inc.*, No. 24-cv-03649-JRR, 2025 WL 2653196, at *3 (D.Md. Sep. 16, 2025) (noting that arbitration clauses are enforced by way of Fed.R.Civ.P. 12(b)(3) motions to dismiss, but "where there are issues as to the validity of the agreement to arbitrate, courts analyze such motions under a summary judgment standard").

Fed.R.Civ.P. 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In determining whether a moving party has made that showing, a court must consider the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."

7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id*.   In applying the summary judgment standard in the context of compelling arbitration, "the burden is on the defendant to establish the existence of a binding contract to arbitrate the dispute."   *Austin v. Experian Info. Sols., Inc.*, 148 F.4th 194, 202 (4th Cir. 2025) (citation modified) (quoting *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021)).

Plaintiff in this case is *pro se*.   Courts hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers."   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   The court has an obligation to construe pleadings of self-represented litigants liberally.   *Id*.   It is not necessary, however, to "conjure up questions never squarely presented," or to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them."   *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

8

**III. Analysis**

  **A. Motion to Dismiss and Compel Arbitration**

  Defendants move to dismiss this case for improper venue and ask the court to compel arbitration based on the Arbitration Policy that Plaintiff electronically acknowledged in June 2018. (ECF No. 9-1, at 1-2). Plaintiff counters that he did not "knowingly or voluntarily agree to arbitration" and procedural unconscionability invalidates the Policy. (ECF No. 12, at 2-3). The court agrees with Defendants that the Arbitration Policy is valid and enforceable.

  **1. Validity of Arbitration Agreement**

  Defendants seek enforcement of the arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). "The FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In considering whether an agreement to arbitrate is enforceable, courts must be "mindful of the FAA's purpose 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements

upon the same footing as other contracts.'" *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

Before determining if arbitration can be compelled, the court must decide whether a valid arbitration provision exists.  Section 4 of the FAA "requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to arbitrate."  *Berkeley Co. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019).  "Whether parties have a valid arbitration agreement governing a dispute is a question of applicable state contract law."  *David*, 720 F.Supp.3d at 396 (quoting *Adkins*, 303 F.3d at 501).  Both parties proceed under the assumption that Maryland law applies, (ECF Nos. 9-1, at 9-10; 12, at 2); thus, the court will apply Maryland law.

"To be binding and enforceable, contracts ordinarily require consideration."  *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 147 (2003).  Under Maryland law, the "[forbearance] to exercise a right or pursue a claim" can be sufficient consideration for an agreement.  *Id*. at 148.  (quoting *Chernick v. Chernick*, 327 Md. 470, 480 (1992)).  The Arbitration Policy shows that both UnitedHealth Group and Plaintiff have foregone their right to pursue employment-related claims in court:

> This Policy creates a contract between UnitedHealth Group and employee requiring both

> parties to resolve employment-related disputes (except the excluded disputes listed below) that are based on a legal claim through final and binding arbitration. Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy.

(ECF No. 9-3, at 3). This "mutual exchange of promises to arbitrate constitutes valid consideration." *David*, 720 F.Supp.3d at 396 (citing *Cheek*, 378 Md. at 153). The Arbitration Policy is supported by consideration.

Plaintiff argues that (1) the Arbitration Policy is unenforceable because he did not "knowingly or voluntarily agree" to arbitration, and (2) procedural unconscionability invalidates the Policy. Both arguments fail.

In support for his argument that he did not knowingly or voluntarily agree to arbitration, Plaintiff states that the Arbitration Policy was "neither presented as a distinct agreement nor acknowledged by Plaintiff in any standalone fashion," because it was presented as part of a click-through "Employee Handbook." (ECF No. 12, at 2-3). The record supports neither contention. The Arbitration Policy submitted as part of Defendants' motion to dismiss shows Plaintiff electronically acknowledged the Policy "in a standalone fashion." (ECF No. 9-3, at 8). The Policy states "By selecting the 'I have read and agree to the above' button, you

11

are signing this agreement electronically. You agree that your electronic signature is the legal equivalent of your manual signature on this Agreement." (*Id.*). According to the document, Plaintiff signed the document electronically on June 13, 2018, two days after receiving his offer letter. (*Id.*). Plaintiff has not disputed that the electronic signature is valid. Such electronic signatures, including as part of a longer onboarding process, have been held to establish that an individual signed an arbitration agreement. *See Mason v. Domino's Pizza, LLC*, No. 20-cv-1908-DLB, 2021 WL 4820520, at *5 (D.Md. Oct. 15, 2021).

Plaintiff provides a screenshot of the email with the click-through onboarding documents he received, which he contends "underscores that no standalone arbitration clause was presented or referenced during the process." (ECF No. 12, at 3). But a review of the screenshot shows that one of the modules is clearly labeled "Arbitration Agreement," showing that even the overview of the onboarding documents flagged that there was an Arbitration Policy. (ECF No. 12-3, at 2). He also contends that "no opportunity was given to consult legal counsel before acknowledging the content." (ECF No. 12, at 3). Plaintiff received his offer letter on June 11, 2024, which included a paragraph notifying him of the Arbitration Policy. (ECF No. 9-4, at 2-4). Plaintiff signed the arbitration policy electronically

12

two days later.  (ECF No. 9-3, at 8).  Plaintiff's email containing

the onboarding materials is dated June 15, 2018 – four days after

he received the offer letter.[4]  (ECF No. 12-3, at 2).  Plaintiff

certainly had the opportunity to consult legal counsel if he

wished.  Finally, Plaintiff notes that the Arbitration Policy had

a "take-it-or-leave-it" design.  (ECF No. 12, at 3).  But this is

not dispositive either:

> "even a take-it-or-leave it proposition, by
> itself, does not establish procedural
> unconscionability."  *Randolph*[ *v. RRR Bowie,
> LLC.*, No. 22-cv-2150-PX], 2023 WL 7110516, at
> *4[ (D.Md. Oct. 27, 2023)].  Even contracts of
> adhesion—those "drafted unilaterally by the
> dominant party and then presented on a 'take-
> it-or-leave-it'         basis"—are         only
> unconscionable   if   "the   terms   in   the
> arbitration clause are so one-sided as to
> oppress or unfairly surprise an innocent party
> or [where] there exists an egregious imbalance
> in the obligations and rights imposed by the
> arbitration clause."  *Walther v. Sovereign
> Bank*, 386 Md. 412, [431] (2005).  There is no
> such imbalance here, where both Plaintiff and

---

[4] The record does not explain why the screenshot of the email
containing the onboarding materials, (ECF No. 12-3, at 2), is dated
two days *after* Plaintiff signed the Arbitration Policy, (ECF No.
9-3, at 8).  Above the onboarding module is the sentence "This is
the final step in our New Employee Connect process you will need
to complete prior to your first day."  (ECF No. 12-3, at 2).  This
could imply that the onboarding materials were completed in
multiple batches, but neither party explains.

> [employer] bound themselves to arbitrate all
> employment-related disputes[.]

*David*, 720 F.Supp.3d at 397-98.  As in *David,* both parties have bound themselves to arbitration, meaning there is no egregious imbalance.

Plaintiff argues that the rushed process for reviewing his onboarding documents rises to the level of procedural unconscionability.  (ECF No. 12, at 3).  Specifically, he states that "the onboarding process was compressed into a one-hour period," which did not provide sufficient time to negotiate or meaningfully understand the documents.[5]  (*Id*.).  Plaintiff provides a declaration, where he says he was "instructed to complete all orientation materials through an electronic portal within a single one-hour session. No alternative options or extended time were made available."  (ECF No. 12-1, at 2).  In support, he cites to the same screenshot of the email with the onboarding documents

---

[5] Plaintiff also attaches an email chain which he argues "confirms that Optum personnel characterized the process as 'cumbersome' and not suitable for adequate review."  (ECF No. 12, at 3).  Defendants argue that the exhibit actually reflects that a particular form that Plaintiff had to fill out was "cumbersome." (ECF No. 14, at 7 n.1).  A review of the email chain, (ECF No. 12-2), shows another employee saying "Please. . . complete the attached document and send it back to me ASAP."  (*Id*. at 2).  A single document is attached, titled "BWest IRF needs completion.pdf."  (*Id*. at 3).  When Plaintiff acknowledges that he will fill out the form, the employee responds "Great. Call me if you need help, it's a bit cumbersome."  (*Id*. at 4).  This does not support Plaintiff's contention that Optum characterized the entire onboarding process as "cumbersome."

14

saying it "support[s] my assertion that newly hired employees. . . were given only a one-hour period to complete a multi-layered, complex set of onboarding documents," with "no mention of an individual arbitration agreement or waiver page."  (*Id.* at 3). His attachment contradicts both contentions.  The only reference to a time period in the email is above the three categories of modules, which provide an "Estimated Time" range of 15-20 minutes or 20-25 minutes, (ECF No. 12-3, at 2). This does not support his contention of a mandatory one-hour period to complete the documents.  As discussed above, the screenshot also clearly shows that "Arbitration Agreement" is listed in the overview as one of the documents he needs to complete.  Plaintiff's exhibit contradicts his declaration, and "inconsistencies are insufficient to sustain a genuine dispute of material fact."  *Future Field Sols., LLC v. Van Norstrand*, No. 23-cv-1301-DKC, 2026 WL 183522, at *25 (D.Md. Jan. 23, 2026) (citing *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984)).

Even assuming his contention about only receiving an hour to complete his onboarding paperwork is accurate, Plaintiff has not shown procedural unconscionability.  Plaintiff received clear notice of the Arbitration Policy in his offer letter two days before he electronically signed the Arbitration Policy.  The reference to the Arbitration Policy within the offer letter is a

single paragraph under the heading "Conditions of Your Employment with UnitedHealth Group," and the entire offer letter is only four pages long.  Under these circumstances, the Arbitration Policy was not procedurally unconscionable.  The situation is akin to that in *David*, where the plaintiff argued that he "was not provided adequate time nor guidance to review the complex contractual terms [of an arbitration provision]."  *David*, 720 F.Supp.3d at 398.  The court declined to find the arbitration provision unconscionable because "[h]is argument is belied by the Offer Letter itself: the language is not particularly complex, the Offer Letter spans fewer than four pages, and the portion relating to arbitration spans only about one."  (*Id.*).  The same analysis controls here.  The Arbitration Policy is valid and not unconscionable.

### 2.    Compelling Arbitration

The next step is to decide whether compelling arbitration is appropriate in this case.

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect

16

> or refusal of the [litigant] to arbitrate the dispute."

*Adkins*, 303 F.3d at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Factors one, three, and four can be dispensed quickly. There is clearly a dispute between the parties, satisfying the first factor. UnitedHealth Group argues that this dispute implicates interstate commerce, the third factor, for two reasons: "UnitedHealth Group and Optum have their principal places of business in Minnesota, while Plaintiff worked in Maryland. Additionally, Plaintiff has alleged claims against all Defendants under the FMLA, Title VII, and the ADA, which are all federal statutes and within the scope of Congress's commerce-clause power." (ECF No. 9-1, at 11). Plaintiff does not dispute either ground, and the interstate commerce factor is satisfied. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (noting that the reach of the FAA is broad and enforcing an arbitration provision included in 'a contract evidencing a transaction involving commerce'" (quoting 9 U.S.C. § 2)). Finally, Plaintiff does not dispute that he refused to arbitrate his claims, (ECF No. 9-1, at 11), satisfying the fourth element.

The only element remaining is the second element, "a written agreement that includes an arbitration provision which purports to cover the dispute." *Adkins,* 303 F.3d at 500-01. Because the court

already determined that the Arbitration Policy is a valid written agreement, the only remaining question is whether it purports to cover the dispute.  As relevant here, the scope of the Arbitration Policy expressly includes:

> [T]ort claims, common law claims; equitable claims; claims for discrimination and harassment; retaliation claims; and claims for violation of any federal, state or other governmental law, statute, regulation or ordinance, except claims excluded below.

(ECF No. 9-3, at 3).  Each of Plaintiff's claims is covered by this language.  His complaint includes four "claims for violation of [a] federal. . . law" under the FMLA (Count I), Title VII of the Civil Rights Act (Count II), and ADA (Counts III, IV). One count, "Wrongful Termination under Maryland Common Law" (Count V), is a common law claim.  The final count, "Pretextual Termination in Violation of Public Policy" (Count VI), states it arises from "federal and state employment protections," which are also contemplated by this clause.  Further, none of these claims is included within the scope of the Arbitration Policy's exclusions:

> Claims excluded from mandatory arbitration under the Policy are (i) Workers' Compensation benefit claims (but workers' compensation discrimination and/or retaliation claims are covered); (ii) state unemployment or disability insurance compensation claims; (iii) claims for severance benefits under the UnitedHealth Group Severance Pay Plan; (iv) claims for benefits under UnitedHealth Group's other ERISA benefit plans; (v) claims for benefits under UnitedHealth Group's Short-

> Term Disability Plan; (vi) claims that may not be the subject of a mandatory arbitration agreement as provided by Section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), Section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims; and (vii) claims that the Dodd-Frank Wall Street Reform and Consumer Protection Act or other controlling federal law bars from the coverage of mandatory pre-dispute arbitration agreements.

(ECF No. 9-3, at 3). All of Plaintiff's claims are clearly within the scope of the Arbitration Policy, satisfying the final factor. The court will compel arbitration.

### 3. Non-Signatory Defendants

The court must next address whether the non-signatory Defendants can enforce the Arbitration Policy against the Plaintiff. Defendants argue that the non-signatories can enforce the Policy, (ECF No. 9-1, at 7), which Plaintiff does not dispute. Judge Bredar previously described the appropriate test:

> "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce. . . an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000). As is relevant here, the Fourth Circuit has explained that the
>
>> [A]pplication of equitable estoppel is warranted when the signatory to the contract containing the arbitration

19

clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (alterations and quotations omitted). The Fourth Circuit has explained that, while there need not be "allegations of collusion[,] . . . at a minimum, there must be allegations of coordinated behavior between a signatory and a nonsignatory defendant, and that the claims against both the signatory and nonsignatory defendants must be based on the same facts, be inherently inseparable, and fall within the scope of the arbitration clause." *Aggarao[]*, 675 F.3d [at] 374[] (citation, quotations, and alterations omitted).

*David*, 720 F.Supp.3d at 399.

Plaintiff's offer letter was signed by Marybeth O'Connor, (ECF No. 9-4, at 5), and printed on letterhead reading "UnitedHealth Group," (*Id*. at 2). While UnitedHealth Group is a defendant in this case, Marybeth O'Connor is not. UnitedHealth Group is a signatory to the agreement. *See David*, 720 F.Supp.3d at 399 (assuming the corporate employer was a signatory to the arbitration provision when the offer letter named the corporate defendant). As Defendants point out in their motion, "the

20

Arbitration Policy specifies that the parties to the agreement include[] UnitedHealth Group's subsidiaries." (ECF No. 9-1, at 8 n.3). Both parties agree that Defendant Optum Services, Inc. is a subsidiary of UnitedHealth Group, (*Id.*; ECF No. 1, at 4). Thus, Optum Services, Inc. is also a signatory to the Arbitration Policy.

That leaves the remaining Defendants - Melissa Kivela, James Jean-Louis, Eric Yoegel, and Shirell Stratton – as non-signatories. The court finds that all may compel arbitration. "Plaintiff's claims against the non-signatories and [the signatories] are virtually indistinguishable and are based on the same facts." *David*, 720 F.Supp.3d at 399. Plaintiff does not bring each claim against specific Defendants, (ECF No. 1, at 8-9), and bases each claim on the same set of facts involving all Defendants. Additionally, courts in this district have allowed non-signatory employees to enforce an arbitration clause "when the non-signatory party is an employee of the signatory corporation and the underlying action in the dispute was undertaken in the course of the employee's employment." *Dennie v. MedImmune, Inc.*, No. 16-cv-3643-PX, 2017 WL 2930462, at *4 (D.Md. July 10, 2017) (quoting *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 11 (1st Cir. 2014)); *see also David*, 720 F.Supp.3d at 399. The non-signatories may enforce the Arbitration Policy against the Plaintiff.

### 4.   Rule 56(d) Discovery

In his opposition to the motion to dismiss, Plaintiff requests in the alternative that the court grant "limited discovery under Rule 56(d) to explore the nature and structure of the onboarding system, policy delivery, employee knowledge, and arbitration clause visibility." (ECF No. 12, at 4). Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Fed.R.Civ.P. 56(d)(2). According to the Fourth Circuit, "a court may deny a Rule 56(d) motion 'when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment.'" *Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 250 (4th Cir. 2018) (quoting *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014)).

The record is clear that Plaintiff signed the Arbitration Policy two days after receiving his offer letter, which clearly called out the Arbitration Policy he would be expected to sign. Plaintiff's own exhibit showing the onboarding system prominently identified an "Arbitration Agreement" in the overview of the documents. (ECF No. 12-3, at 2). Plaintiff cannot show that any additional information about the "onboarding system, policy

22

delivery, employee knowledge, and arbitration clause visibility" would create a genuine issue of material fact. Plaintiff's request for discovery under Rule 56(d) will be denied.

### 5.   Appropriate Remedy

Defendants have moved to dismiss and specifically ask this court to dismiss without prejudice pending arbitration. (ECF No. 9-1, at 12). Courts in this district have used their discretion to stay the action, however, during the pendency of the arbitration rather than dismiss the action without prejudice. *See Reed*, 2025 WL 2653196, at *11; *Miranda Sorto v. Carrols LLC*, No. 23-cv-2263-DKC, 2024 WL 2783906, at *8 (D.Md. May 30, 2024). In *Smith v. Spizzirri*, 601 U.S. 472 (2024), the Supreme Court of the United States held that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Id*. at 475-76. While the Fourth Circuit clarified that the case does not state anything about "what happens when the appealing party never requests a stay," *Mod. Perfection, LLC v. Bank of Am., N.A.,* 126 F.4th 235, 243–44 (4th Cir. 2025), the court will exercise the discretion to stay the case. As the Supreme Court stated in *Smith*, a stay pending arbitration appears to better align with Congress' intention in

23

the FAA: "[i]f a district court dismisses a suit subject to arbitration even when a party requests a stay, that dismissal triggers the right to an immediate appeal where Congress sought to forbid such an appeal."  *Smith*, 601 U.S. at 478.

### B.   Motion to Expedite Scheduling Conference

Because the court will grant the motion to compel arbitration, Plaintiff's motion to expedite the scheduling conference will be denied as moot.

### IV.   Conclusion

For the foregoing reasons, Defendant's motion to dismiss and compel arbitration will be granted in part and Plaintiff's motion to expedite the scheduling conference will be denied as moot.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
